IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-81326 |
| | ) | |
| TERRY M. JAMES and | ) | CH. 13 |
| SUSAN L. JAMES, | ) | |
| | ) | |
| Debtors. | ) | |

## **MEMORANDUM**

Hearing was held in Omaha, Nebraska, on November 26, 2007, on Debtors' Amended Chapter 13 Plan (Fil. #13), and the Objection to Confirmation filed by the Chapter 13 Trustee (Fil. #23). Samuel J. Turco, Jr. appeared for Debtors, and Tom Kenny appeared on behalf of the Chapter 13 Trustee. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L).

### *Background*

The Chapter 13 Trustee had three separate objections to confirmation of Debtors' amended plan. However, prior to the hearing, the Chapter 13 Trustee and Debtors resolved two of the objections. The parties advised the Court that Debtors have filed an amended Form 22C to resolve one of the objections, and Debtors will file an amended plan or the parties will enter into a stipulated confirmation order with respect to the other objection. According to line 58 of the amended Form 22C (Fil. #34), Debtors' monthly disposable income is $985.11.

The Chapter 13 Trustee's sole remaining objection to Debtors' amended plan is as follows:

> The debtors show excess funds on schedule J of $1,985.91, but have proposed plan payments of only $725.00. Since the debtors apparently have the ability to pay significantly more to unsecured creditors than is being proposed, the Trustee objects that the plan was not filed in good faith.

The parties have advised the Court that Debtors have agreed to amend the plan to provide for monthly payments of approximately $985.00. The Chapter 13 Trustee asserts that the good faith standard of 11 U.S.C § 1325(a)(3) can be used to support denial of confirmation where the debtor has the ability to pay significantly more to unsecured creditors than the plan proposes, even if the plan proposes to pay the monthly disposable income calculated by Form 22C.

Debtors in this case are so-called "above-median" debtors for purposes of 11 U.S.C § 1325(b)(3). Debtors have regular and stable incomes and there are no unique circumstances or disputes with respect to the numbers used in completing the means test Form 22C. Instead, Debtors simply fall into that category of debtors whose actual expenses happen to be substantially less than the expense deductions allowed under Form 22C. This is particularly true with respect to housing,

food, clothing, household supplies, and automobile ownership expense. Thus, the issue presented to this Court is whether a plan is filed in good faith when the plan payment is based on disposable income calculated by Form 22C, which uses expense deductions that far exceed Debtors' actual expenses.

## *Discussion*

a.  <u>The Chapter 13 Means Test</u>.

   The applicable statute provides as follows:

   (b)(1)  If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
   (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
   (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
   (2)    For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended –
   (A)    (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
   (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
   (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
   (3)    Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than [certain median income provisions].

   Under new 11 U.S.C § 1325(b)(3), for above-median debtors, the expenses to be deducted in calculating disposable income "shall be determined" under Bankruptcy Code § 707(b)(2)(A) and (B). In October 2005, the Judicial Conference of the United States promulgated Official Form B22C

to enable debtors to provide the information necessary to calculate whether the debtor's income is above or below the median and, if above, to calculate the deductions allowed by § 707(b)(2) and for calculation of monthly disposable income under § 1325(b)(2) and (3). Under the form, the debtor's monthly expenses are certain monthly expense amounts specified under the National Standards and Local Standards and the debtor's actual monthly expenses for categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides.

As an initial matter, it is not at all clear to this Court how the amended plan proposed by Debtors will satisfy the means test. Specifically, the amended means test calculation finds that the monthly disposable income of Debtors is $985.11. That is the amount that must be returned to unsecured creditors under the plan. 11 U.S.C § 1325(b)(1)(B). Note that this does not mandate a plan payment of only $985.11. Instead, the plan payment needs to be higher in order to have enough money available, after payment of administrative expenses, secured claims, and other amounts to be paid through the plan, to ensure the required return to unsecured creditors. Presumably, this issue will be resolved in the amended plan to be filed by Debtors in resolution of the Chapter 13 Trustee's objections that have been settled.

In *In re Mitchell*, 368 B.R. 845 (Bankr. D. Neb. 2007), this Court was faced with a similar issue where the debtor's income available by comparing Schedules I and J exceeded the projected disposable income resulting from application of Form 22C. In that opinion, this Court found that by using the word "shall" in 11 U.S.C § 1325(b)(3), it appeared that Congress mandated the use of the calculations set forth in the Form 22C test to determine the debtor's "reasonably necessary" expenses. As in this case, in the *Mitchell* case, there were no unique issues with respect to the calculations, other than the simple fact that the debtor's actual expenses were less than those allowed under the means test. This Court found that since there were no such unusual issues, the disposable income shown by the means test determines the amount that should be paid to unsecured creditors under the plan. *Id.* at 849-50.

Subsequently, the Eighth Circuit Bankruptcy Appellate Panel decided the case of *Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829 (B.A.P. 8th Cir. 2007). In that opinion, the B.A.P. wrote:

> Post-BAPCPA, 11 U.S.C. § 1325(b) is a new creature. While it contains language held over from the old statute, Congress has given it new parameters, with the intention of producing results dramatically different from pre-BAPCPA outcomes. "Projected disposable income" is the disposable income calculated on Form 22C extrapolated over the applicable commitment period. It is the amount to be paid on unsecured claims. The statute requires no more. If the disposable income is negative, there is no applicable commitment period and a debtor is not required to propose a plan that calculates payments to unsecured creditors in the same manner as plan payments to all creditors were calculated pre-BAPCPA.

Despite the *Mitchell* ruling by this Court and the *Frederickson* ruling by the B.A.P., the Chapter 13 Trustee urges that the "good faith" test of § 1325(a)(3) can be used to defeat

-3-

confirmation of a plan where the debtor has the actual ability to pay more than the amount calculated by Form 22C. The Chapter 13 Trustee asserts that it does not appear the good faith argument was raised in either *Mitchell* or *Frederickson*.

b.  The "Good Faith" Standard.

This Court previously addressed Eighth Circuit law regarding the good faith standard in connection with the ability to pay under a plan in *In re Nelson*, Case No. BK07-80007 (Bankr. D. Neb. Apr. 18, 2007), where this Court stated:

> Among other requirements for confirmation of a Chapter 13 plan, the Bankruptcy Code at 11 U.S.C. § 1325(a)(3) provides that the plan must be proposed in good faith and not by any means forbidden by law. The Bankruptcy Code does not define the phrase "good faith." The Eighth Circuit Court of Appeals has described the good faith inquiry as focusing on "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987). In *Zellner,* the Eighth Circuit determined that the "ability to pay" criteria were subsumed in 11 U.S.C. § 1325(b). *Id.* Subsequently, the Eighth Circuit determined that *Zellner* also preserved a traditional "totality of circumstances" approach in determining whether a plan is proposed in good faith and factors should be considered such as the type of debt sought to be discharged, whether the debt is nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief. *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1349 (8th Cir. 1990). Except for the objection to certain expenses, none of Kellogg's objections pertain to the factors to be considered for good faith purposes. Instead, its objections seem to relate more to ability-to-pay factors which, according to the Eighth Circuit, are subsumed in § 1325(b), and not in the good faith standard.

Order of Apr. 18, 2007 (Fil. #23).

While recognizing that as a result of *Zellner* and later cases, Debtors' ability to pay cannot be reached under the good faith test, the Chapter 13 Trustee urges that such law should no longer be applicable post-BAPCPA. Specifically, the Chapter 13 Trustee noted that at least one bankruptcy court has found that ability to pay should now be part of the good faith consideration of § 1325(a)(3). In *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007), that court stated:

> To summarize, the developing body of case law recognizes a relationship between Section 707(b)(2) and Section 707(b)(3)(B) whereby all debtors must submit first to an objective evaluation of their financial circumstances and perhaps then a second, subjective evaluation of their financial circumstances as well. Therefore, it stands to reason that BAPCPA includes a similar objective/subjective

dichotomy between Section 1325(b) and Section 1325(a)(3), for it is essential that these two sections mirror Sections 707(b)(2) and (b)(3)(B). Assume, for example, that an above-median-income Chapter 7 debtor has passed the Section 707(b)(2) means test but that his financial circumstances nonetheless warrant dismissal because of Section 707(b)(3)(B). The threat of dismissal would have little credibility if that debtor could simply convert his case to a Chapter 13 case and then confirm a plan that required nothing more of him than that required by Section 1325(b). There is no question that Congress, in enacting BAPCPA, wanted Chapter 7 debtors who risk Section 707(b)(1) dismissal because of their financial wherewithal to still benefit from the bankruptcy laws through the proposal and execution of a Chapter 13 plan that accounts for that wherewithal. Otherwise, Congress would not have given conversion to Chapter 13 as an option to dismissal. 11 U.S.C. § 707(b)(1). However, that purpose cannot be fulfilled if debtors who are so situated are permitted the very same safe harbor under Section 1325(b) that is denied them in Chapter 7 by Section 707(b)(3)(B). Ability to pay must be part of Section 1325(a)(3) good faith if that section is to properly complement Section 1325(b).

The Chapter 13 Trustee and the *McGillis* court further note that one of the additional changes to § 1325 made by BAPCPA was new provision § 1325(a)(7), which provides that a court shall confirm a plan if the action of the debtor in filing the petition was in good faith. The Chapter 13 Trustee speculates that this new confirmation standard appears to subsume the criteria of *Zellner* and, therefore, the good faith standard of § 1325(a)(3) should now be interpreted to include ability to pay factors.

While the Chapter 13 Trustee's argument is compelling, it fails to recognize one very important issue. That is, when revising § 1325(b), Congress made significant changes and incorporated a detailed formula for calculating the debtor's projected disposable income. Thus, by making § 1325(b) more detailed (and mandatory), it appears clear that the ability to pay factors *are* intended to be subsumed into § 1325(b). Thus, this Court is compelled to follow Eighth Circuit precedent that ability to pay factors are subsumed into § 1325(b), and not in the good faith standard of § 1325(a)(3). A debtor does not fail the good faith test simply because of the ability to pay more than the means test result. There must be something else to trigger a lack of good faith in proposing a plan.

As indicated previously, this is not a case where there are any unusual circumstances with respect to the calculation of Debtors' current monthly income, nor are there any "excessive" or "unnecessary" expenses included in the means test calculation. Therefore, under the facts and circumstances of this case, I find that Debtors have met the good faith confirmation standard of § 1325(a)(3) and the Chapter 13 Trustee's objection to confirmation is overruled.

  Since Debtors have acknowledged the need to amend their plan as a result of the Chapter 13 Trustee's other objections,[1] the plan will not be confirmed at this time. Debtors shall have until December 21, 2007, to file an amended plan or a stipulated confirmation order.

  DATED: November 30, 2007.

BY THE COURT:

/s Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:
 *Samuel J. Turco, Jr.
 Tom Kenny/Kathleen Laughlin
 U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[1] And, perhaps, to ensure the appropriate return to unsecured creditors as a result of the amended means test projected disposable income calculation.